UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
MAY 27 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

|  |  |
|---|---|
| VICKIE L. DAWSON,<br><br>               Plaintiff,<br><br>               v.<br><br>PENSION PLAN FOR THE OFFICE EMPLOYEES OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS<br><br>And<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,<br><br>               Defendants. | Civil Action No. 14-1765 (RCL) |

## MEMORANDUM OPINION

The instant lawsuit arises from a dispute over disability benefits. Plaintiff Vickie Dawson commenced this action to recover disability benefits from defendants Pension Plan for the Office Employees of the International Brotherhood of Electrical Workers (the Plan) and International Brotherhood of Electrical Workers (IBEW), pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1132, and 28 U.S.C. § 1331.

Pending before the Court are cross-motions for summary judgment.

### I.      FACTUAL AND PROCEDURAL BACKGROUND

IBEW sponsored "the Plan," an employee pension benefit plan governed by its written Rules and Regulations. In order to be entitled to a disability benefit under the Plan, the Rules and Regulations require that a participant be totally disabled, which is defined as "unable to engage in

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve (12) months." Ex. 5 of the Administrative R.: Rules and Regulations (R&R) at 9. The Plan also explains how claims are administered:

> 8.1 Administration
> The Plan will be administered by the IST [International Secretary-Treasurer of the IBEW]. The IEC [International Executive Council of the IBEW] will pass upon all disputed questions concerning the applications or interpretation of the provisions of the Plan. The IEC will decide all such questions in accordance with the terms of the Plan, and all such decisions of the IEC will be final and binding upon the IBEW and the Participating Employer and upon the Employees. Benefits under this Plan will be paid only if the IEC decides in its discretion that the applicant is entitled to them.

*Id.* at 23. The International Secretary-Treasurer of the IBEW is Salvatore J. Chilia. Aff. of Salvatore Chilia, Defs.' Mot. S.J. Ex. 1 ¶ 3. The Plan further explains the benefit procedure:

> 8.3 Benefit Procedure
> All claims for benefits under the Plan will be directed to the attention of the IST for determination. All appeals of adverse benefit determinations made by the IST will be directed to the IEC for determination. Benefits under this Plan will be paid only if the IST or IEC decides in his or its discretion in accordance with the claims procedures that the applicant is entitled to them.

R&R 23.

Ms. Dawson submitted her claim for benefits on or around April 23, 2012. Administrative Record (AR), ECF 14-1, at 5. Ms. Dawson included in her application records of her medical history over the last several years. *Id.* at 7-217. In order to determine whether Ms. Dawson was totally disabled as defined by the Plan, Mr. Chilia directed that her application and medical records be forwarded to IMED, Inc., an organization that provides independent medical reviews. Ms. Dawson's records were reviewed by Dr. Dhruv Pateder, a physician who specializes in orthopedic and neurological spine surgery. Dr. Pateder stated with a reasonable degree of medical certainty that Ms. Dawson was not totally disabled. AR 218-23.

In a letter dated June 12, 2012, Mr. Chilia denied Ms. Dawson's application for retirement disability benefits based on Dr. Pateder's medical opinion. AR 224-25. On June 27, 2012 Ms. Dawson appealed the Plan's denial and asked that the Plan "[p]lease advise of any specific information you require to perfect Ms. Dawson's claim, also as set out in the summary plan description, and of any procedural or scheduling issue of which we should be aware." AR 226.

The Plan then requested IMED, Inc. provide a second independent medical review of Ms. Dawson's medical records as well as a physical exam. Dr. Robert Gordon, an orthopedic surgeon, performed an independent medical review of Ms. Dawson's records, examined Ms. Dawson, and issued his medical opinion on August 30, 2012. AR 230-32. He concluded that Ms. Dawson had the physical capacity to perform sedentary-type work, but recommended that her mental capacity be reviewed by someone in the mental health field or someone who specializes in addiction medicine. AR 232. Given this recommendation, the Plan scheduled an examination for Ms. Dawson with Dr. Bruce Smoller, a physician who specializes in neuropsychiatric medical and occupational psychiatry for October 18, 2012.

By letter dated October 12, 2012, Ms. Dawson submitted to the Plan evidence that she had been approved for disability benefits by the Railroad Retirement Board (RRB) and the National Electrical Benefit Fund (NEBF), along with other medical evidence. AR 240-66.

Ms. Dawson was examined by Dr. Smoller on October 18, 2014, as scheduled. AR 233-39. Dr. Smoller determined that Ms. Dawson did not meet the criteria for total disability as defined by the Plan. *Id.*

By letter dated November 7, 2012, Ms. Dawson submitted further medical evidence in support of her claim. *Id.* AR 268-80.

3

The IEC, in a letter dated December 14, 2012, informed Ms. Dawson of its determination that she was not eligible for disability retirement benefits. AR 1. The letter notified Ms. Dawson of her right to appeal. *Id.*

Ms. Dawson timely filed suit in this Court.

## II.  LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant may successfully support its motion by "informing the district court of the basis for its motion, and identifying the portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," on a motion for summary judgment. *Id.* However, if the non-movant's "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. The non-movant must present more than a "mere . . . scintilla of evidence" to avoid summary judgment. *Id.* at 252. Indeed, "[c]onclusory allegations

unsupported by factual data will not create a triable issue of fact." *Pub. Health Research Grp. v. FDA*, 185 F.3d 898, 908 (D.C. Cir. 1999).

### B. Standard of Review

A denial of benefits is subject to de novo review unless the benefit plan gives its fiduciaries discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). Where the plan grants discretion to the fiduciaries, any fiduciary determination must be upheld unless it was arbitrary and capricious. *Id.*

### III. ANALYSIS

#### A. Standard of Review

As a preliminary matter, it is clear that the Court's review here is for abuse of discretion because the Plan gives the IEC discretionary authority to interpret the Plan's provisions and to review claims. Ms. Dawson insists that the Plan fails to expressly grant the IST or IEC discretion in its claims decisions because "[t]he actors are mixed in their use of terminology, it is difficult to imagine that the participants of the Plan would be clear." Pl.'s Mem. in Support of Mot. S.J. ("Pl.'s Mot. S.J.") at 8. However, the Court disagrees: The language is clear. The Rules and Regulations plainly state that "[b]enefits under this Plan will be paid only if the IEC decides in its discretion that the applicant is entitled to them." R&R 23, and reiterates that "[b]enefits under this Plan will be paid only if the IST or IEC decides in his or its discretion in accordance with the claims procedures that the applicant is entitled to them." *Id.* at 24.

#### B. Reasonableness of Decision

The Plan's decision that Ms. Dawson was not eligible for a disability benefit was not arbitrary and capricious. In order to receive a benefit, Ms. Dawson must be "disabled" under the

5

Plan's definition of the word, or "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve (12) months." R&R 9.

Upon receipt of Ms. Dawson's medical evidence, Mr. Chilia appropriately sought the advice of independent healthcare professional Dr. Pateder. Upon review of Ms. Dawson's records, Dr. Pateder found that she was not totally disabled. AR 218-23. Based upon Dr. Pateder's medical opinion, Mr. Chilia denied Ms. Dawson's application for a disability benefit. AR 224.

Following Ms. Dawson's appeal, the Plan permitted her to submit additional medical evidence to the IEC in consideration of her appeal. AR 240-80. The Plan also arranged for two additional independent medical reviews of her medical records and a physical examination. AR 230-32. Each additional doctor concurred that Ms. Dawson was not disabled under the Plan's definition of the word. AR 232, 238.

The IEC reviewed the entire appeal file, and in light of the three independent medical reviews by Dr. Pateder, Dr. Gordon, and Dr. Smoller, concluded that Ms. Dawson did not meet the Plan's definition of disabled. As such, the IEC denied her appeal. AR 1.

Although Ms. Dawson argues that she presented medical evidence of her disability, the Plan is not required to give deference to the opinion of her treating physicians over the opinions of independent consulting physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). The opinions of a treating physician are not entitled to a presumption of deference and plan administrators do not have to explain why they credit reliable evidence that conflicts with a treating physician's evaluation. *Id.*; *see also Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d

427, 435 (D.C. 2011). Ms. Dawson's assertion that the IEC actually gave her treating physicians' opinions *zero* weight is unsupported.

Ms. Dawson also argues that Drs. Gordon and Smoller did not have access to all of her medical records, and lists seven pieces of evidence that were not considered. Pl.'s Mot. S.J. 21-22; Pl.'s Opp'n 5-6. However, it is clear from the record that each physician had access to all records available at the time of his consultation.

Ms. Dawson submitted the records in question in two batches: one on October 12, 2012, and one on November 7, 2012. AR 240-41, 268. Each of those documents post-dates Dr. Pateder's medical review of May 31, 2012: the records simply did not exist at the time of his review. Additionally, Ms. Dawson submitted all of these records for the first time after Dr. Gordon's August 30, 2012 review. And finally, Dr. Smoller's report specifically references each record from the October 12, 2012 submission. AR 235-36. Dr. Smoller's report, dated October 18, 2012, pre-dates Ms. Dawson's November 2012 submission. The record thus makes clear that each medical consultant had all the evidence then available—a fact that Ms. Dawson now concedes. *See* Pl.'s Reply in Support of Mot. S.J. 4. Furthermore, *all* of the records Ms. Dawson provided were submitted by Mr. Chilia with Ms. Dawson's appeal to the IEC, and the IEC reviewed these documents at its meeting in December 2012. AR 1-280.

Ms. Dawson also dedicates substantial attention in her summary judgment brief attempting to disprove the validity or accuracy of the three medical opinions. Pl.'s Mot. S.J. 9-18. For example, she disputes their scientific methods, advancing medical "common knowledge" and "well-known truths," disputing "the place that subjective self-reports have in diagnostic procedures," and arguing that the doctors ignored recent medical advances. *Id.* However, in nearly ten pages she provides virtually no citations to any evidence or support that would tend to show

that the doctors' conclusions were incorrect. In short, she merely disagrees with their conclusion. Neither Ms. Dawson nor this Court is equipped to second-guess the opinions of medical professionals without as much as one citation to a relevant source. Therefore the Court must conclude that the Plan's decision to accept the opinions of three independent medical professionals that Ms. Dawson was not disabled was reasonable.

Nor is the Plan required to award Ms. Dawson a disability benefit because the NEBF and RRB determined her to be disabled: While the standards may be the same, Ms. Dawson points to no law requiring the Plan to consider these determinations. Ms. Dawson points to Mr. Chilia's statement as evidence that the Plan's decision was inconsistent with standard practice:

> Had the RRB awarded Ms. Dawson a disability pension prior to her application to the OE Plan, it is likely that her application would have been approved without being referred for review by an independent physician. Further, the NEBF's practice is to approve disability applications for those participants who can show they have been approved for a disability pension from the Social Security Administration or the Railroad Retirement Board.

AR 2. However, the Plan's failure to automatically award benefits in this case is not inconsistent with this statement. When Mr. Chilia made the initial benefits determination in this case, he had no evidence that either the RRB or the NEBF had approved Ms. Dawson's benefit application, so it obtained an independent review of her claim. Nothing in Mr. Chilia's statement implies the Plan typically reverses its decisions on the basis of an award of benefits from another source in the face of newly-obtained conflicting medical opinions. Ms. Dawson simply presents no evidence that the Plan was required to consider the NEBF or RRB determinations on her case's appeal.

In short, Ms. Dawson has failed to set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The evidence suggests that the Plan acted reasonably in denying her benefits claim, and Ms. Dawson sets forth no facts that tend to show otherwise.

### C. Other Issues

Ms. Dawson also presents several other potential issues with the handling of her claim. She argues that the Plan failed to establish and maintain claims procedures, that she was not given sufficient notice of the reason for the adverse determination, and that there was not an appropriate level of "distinction" between her application and her appeal.[1]

1. Claims Procedures in SPD

Ms. Dawson argues that the Plan's claims procedures are void because they are outlined in the Summary Plan Description (SPD) and not the Plan's Rules and Regulations. Pl.'s Opp'n 3-4. However, she provides no legal support for her statement, and indeed ERISA requires that a Plan's claims procedures be outlined in detail in the SPD. *See* 29 C.F.R. 2520.102-3(s). Ms. Dawson does not cite—and the Court was unable to locate—a similar requirement that the procedures be located in the Plan document.

Ms. Dawson correctly points out that "the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan" for purposes of ERISA. *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011). As such, courts generally will not enforce the terms of an SPD. *Id.*

---

[1] Ms. Dawson also alleges in her complaint that there was a conflict of interest. Compl. ¶ 38 ("By acting as the claims administrator and paying the benefits under the Plan, the Plan is subject to a conflict of interest which should be weighed heavily as a factor in determining that the Plan as abused its discretion."). The Court agrees that such a factor would be relevant, but Ms. Dawson appears to have abandoned that argument on summary judgment, as she does not mention it in any of her briefs. *See Visinscaia v. Beers*, 4 F. Supp. 3d 126, 134 (D.D.C. 2013); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (noting that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) ("A contention included in an answer, but not pressed before the district court, may not be presented on appeal as a ground for reversal."). As such, there is no evidence on the record that would allow the Court to evaluate the nature, extent, and effect on the decision-making process of any conflict of interest.

However, the Rules and Regulations at issue explicitly state that the Plan's claims procedures will be provided in the SPD, R&R 24, with the effect of incorporating the claims procedures into the Plan. *See Zalduondo v. Aetna Life Ins. Co.*, 952 F. Supp. 2d 228, 232 (D.D.C. 2013). Ms. Dawson admits that the claims procedures outlined in the SPD comply with federal regulations. Pl.'s Opp'n 4. Even if that were not the case, Ms. Dawson fails to allege that she was not provided with the claims procedures or that she was otherwise harmed because the procedures were printed in the SPD rather than the Rules and Regulations. Because she does not allege harm, she would not be entitled to a remedy even if there were a deficiency. *See, e.g., Clark v. Feder, Semo & Bard*, 808 F. Supp. 2d 219, 230 (D.D.C. 2011) (deficiency in SPD only gives rise to claim for relief where there is a showing of actual loss).

2. Notice of Adverse Determination

Ms. Dawson also argues the initial notice of the denial of her claim did not contain a specific reason for the adverse determination, as is required by 29 C.F.R. 2560.503-1(g). The initial notice informed Ms. Dawson:

> In order to be considered totally disabled, an employee must be *"unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve (12) months."*
>
> In order to determine whether you are totally disabled under this definition, we sought an independent medical review of the medical records you submitted to the IBEW under cover dated April 23, 2012. As you can see from the enclosed record review report, the reviewing physician determined that you are not unable to engage in any substantial gainful activity by reason of a determinable physical or mental impairment. I have therefore determined that you are not eligible for a disability retirement based on total disability.

AR 1. The letter then informed Ms. Dawson of her right to appeal the decision.

Mr. Chilia's denial letter meets the federal requirements. The letter referred to the specific plan provision on which the determination is based, explained why her claim was denied and

included the medical records on which the denial was based, and informed her of her right to appeal. Indeed, Ms. Dawson does not even attempt to explain why this letter provided her with inadequate notice or what further information she needed.

Ms. Dawson also points out that the initial denial letter did not contain a description of any additional material or information necessary for her to perfect her claim and an explanation of why such material or information is necessary, as required by 29 C.F.R. 2560.503-1(g)(1)(iv). However, her claim was not lacking any particular information: Her application was complete, the Plan simply determined that she did not meet the definition of disability under the relevant provisions.

In short, Mr. Chilia's notice of the denial of Ms. Dawson's claim provided her with adequate notice as required by the relevant federal regulations.

3. Distinction Between Application and Appeal

Ms. Dawson argues that "[f]ederal regulation is specific about the appeal not being done by the same person or a subordinate" and that "[t]he appeal consultants cannot be the same as the initial consultants or their subordinates." Pl.'s Mot. S.J. 20. Ms. Dawson points out several related issues that she believes are problematic.

Mr. Chilia's initial denial letter states that "the reviewing physician determined that you are not unable to engage in any substantial gainful activity by reason of a determinable physical or mental impairment. I have therefore determined that you are not eligible for a disability retirement based on total disability." Ms. Dawson argues that if the doctor made the decision on the claim, the decision is not "due deference, as the doctor did not receive adequately delegated discretion." Pl.'s Mot. S.J. 20. However, it is clear that Mr. Chilia denied Ms. Dawson's claim, reasonably relying on a consulting physician's opinion that Ms. Dawson was not disabled.

Second, Ms. Dawson points out, "when the appeal comes in, it is summarized for the IEC by the IST, not exactly a Chinese wall," *id.*, implying that it was inappropriate for Mr. Chilia to provide a summary of the claim history to the IEC for their review. However, Ms. Dawson does provides no legal support for her position and the Court finds this in no way vitiates the review process.

Third, the Plan "referred Ms. Dawson back to IMED (the health consultant provider). The [] Plan takes action through its Plan Administrator, the IST. In other words, the IST retained consultants. That's not inline [sic] with the de novo review conceived of by the regulations." *Id.* While the Court cannot ascertain exactly what Ms. Dawson argues, it seems she means to imply impropriety from the fact that the independent physician consultants came from the same organization at both the application and appeal stage. IMED's organizational purpose is to provide independent reviews, however, and Ms. Dawson presents no evidence calling into question the independence of the three physicians.

### IV.   CONCLUSION

For the aforementioned reasons, the Court finds that there are no genuine issues as to any material facts in this case. The Court hereby GRANTS defendants' motion [13] for summary judgment and DENIES plaintiff's motion [15] for summary judgment. This case will be DISMISSED with prejudice.

A separate order will be issued alongside this opinion reflecting the relief contemplated herein.

**IT IS SO ORDERED.**

Signed May 26, 2015 by Royce C. Lamberth, United States District Judge.